# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BEN WALKER,** | : | |
| | : | **Civil No. 3:12-CV-2206** |
| **Plaintiff** | : | |
| | : | **(Judge Caputo)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **COURT OF COMMON PLEAS OF** | : | |
| **MONROE COUNTY, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.      Statement of Facts and of the Case

This is a *pro se* civil rights action brought by Ben Walker  through the filing of

a civil rights complaint on November 5, 2012. (Doc. 1.) Walker's complaint, which he

has endeavored to amend three time in the past sixty days, (Docs. 2, 5 and 6), names

the Court of Common Pleas of Monroe County, the prothonotary, the deputy

prothonotary, several assistant public defenders, and a state court judge as defendants.

(Id.) Walker then alleges that these institutional and individual defendants have

collectively harmed him in the course of state court litigation of a protection from

abuse matter, and further asserts that the defendants, individually and collectively, have

failed to comply with the Freedom of Information Act. (Id.)

Walker's *pro se* complaint has inspired a welter of sometimes confusing

litigation activity over the forty five days. Much of this activity has been inspired by

Walker, who has amended, revised, supplemented and corrected pleadings no less than

seven times during the brief course of this litigation. (Docs. 2, 4, 5, 6, 7, 8, and 25.) As a result of this flurry of activity, a total of five motions are now pending before this court: a motion for entry of default, filed by Walker (Doc. 12); a motion to strike this default motion (Doc. 15); two motions to dismiss filed by the various defendants (Docs. 17 and 20); and a motion for extension of time in which to respond to Walker's complaint. (Doc. 14.)

In order to provide a fair and orderly course to this litigation, for the reasons set forth below, it is recommended as follows: First, Walker's motion for entry of default should be denied since the defendants have now responded to the complaint by filing motions to dismiss. Second, in light of the denial of this default motion, the defendants' motion to strike this default motion should be dismissed as moot. Third, since there are a series of profound legal deficiencies in Walker's various *pro se* complaints, the defendants' motions to dismiss should be granted and the plaintiff's complaint should be dismissed without prejudice to the plaintiff endeavoring to file a single comprehensive amended complaint which attempts to cure the deficiencies cited in this report and recommendation, provided that the plaintiff acts promptly. Finally, in light of this proposed disposition of the motions to dismiss, it is recommended that the motion for extension of time in which to respond to Walker's various complaints be dismissed as moot.

## II.   <u>Discussion</u>

## A.   <u>Walker's Motion for Entry of Default Should be Denied</u>

At the outset, we are confronted with competing motions relating to the plainitff's request for entry of a default judgment in this matter. First, the plaintiff seeks the entry of default, citing an alleged failure by the defendants to timely respond to his complaint. (Doc. 12.) The defendants, in turn, have filed a motion to strike this motion for default, (Doc. 15), which argues that service of the complaint was inadequate because it did not fully comply with Rule 4 of the Federal Rules of Civil Procedure.

Rule 4 provides, in part, that in that: "The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service." Fed. R. Civ. P., Rule 4(c)(1). The rule further prescribes that "[a]ny person who is at least 18 years old and not a party may serve a summons and complaint" and states that:

> Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served in a judicial district of the United States by:
>
> **(1)** following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> **(2)** doing any of the following:
>
> **(A)** delivering a copy of the summons and of the complaint to the individual personally;
>
> **(B)** leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

**(C)** delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P., Rule 4(c)(2) and (e).

As for institutional defendants, they

[M]ust be served:

**(1)** in a judicial district of the United States:

**(A)** in the manner prescribed by Rule 4(e)(1) for serving an individual; or

**(B)** by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant.

Fed. R. Civ. P., Rule 4(h).

In this case there is substantial doubt in the court's mind that the plaintiff properly served the defendants in this case since the proof of that service consists of nothing more than copies of certified mail receipts which may, or may not, signify full compliance with the strictures of Rule 4. Moreover, it is evident to the court that some significant confusion may have existed on the part of the defendants regarding both the nature of service, and the time frame for a response to Walkers' complaint. This confusion was, at least in part, a product of the character of Walker's pleadings, which contained many fragmentary amendments and revisions. Furthermore, it is entirely undisputed that the defendants have now fully responded to Walker's complaint, by

moving to dismiss that complaint within days of the putative default deadline urged by Walker in his motion. Furthermore, as discussed below, a consideration of these motions to dismiss reveals that Walker's complaint is profoundly flawed in numerous and fundamental ways.

On these facts, it is submitted that Walker's motion for entry of default should be denied. Default judgments are governed by Rule 55 of the Federal Rules of Civil Procedure, and a default judgment may only be entered when the party against whom the default judgment is sought "has failed to plead or otherwise respond." Rule 55(a), F.R.Civ.P. In this regard, it has long been recognized that: "The entry of a default judgment pursuant to Rule 55(b), Fed.R.Civ.P., is not a matter of right but is in the sound discretion of the court. Default judgments are not generally favored and any doubt in entering or setting aside a default judgment must be resolved in favor of the defaulting party. If a plaintiff has not been substantially prejudiced by the delay, a defaulting party who has appeared before the court should be afforded the opportunity to answer the complaint." Wallace v. De Werd, 47 F.R.D. 4, 5 (D.V.I. 1969). Thus, "whenever possible, cases should be decided on their merits; default judgments are not favored in the law. Schwab v. Bullock's Inc., 508 F.2d 353 (9th Cir. 1974)." United States v. Skalsky, 71 F.R.D. 564, 567-68 (E.D. Pa. 1976) aff'd, 556 F.2d 570 (3d Cir. 1977). This rule disfavoring default judgments applies with particular force when there are substantial doubts as to whether proper service was made on all defendants at the

outset of the litigation. In such instances, it is well settled that a "default judgment entered when there has been no proper service of the complaint is . . . void, and should be set aside." Gold Kist, Inc. v. Laurinburg Oil Co., Inc., 756 F.2d 14, 19 (3d Cir. 1985).

Here we are presented with a record marked by confusion, where there is substantial doubt regarding the efficacy of Walker's efforts at service of his complaint, and the defendants have now fully responded to the merits of Walker's claims by filing motions to dismiss this complaint. These motions have great merit, and we can perceive of no reason why this lawsuit should not be addressed on its merits. Therefore, since "[d]efault judgments are not generally favored and any doubt in entering or setting aside a default judgment must be resolved in favor of the defaulting party," Wallace v. De Werd, 47 F.R.D. 4, 5 (D.V.I. 1969), these circumstances combine to call for denial of Walker's motion for entry of default judgment and compel consideration of this case on its merits instead. Those merits are discussed below.[1]

### B.    Motion to Dismiss-Standard of Review

---

[1]Given this proposed resolution of Walker's motion for entry of default, it is recommended that the defendants' motion to strike this pleading be dismissed as moot.

For their part, the defendants have moved to dismiss this complaint, citing Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a p[arty] to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... p[arty] can prove facts that the ... p[arty] has not alleged."

<u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).

As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action a party must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." <u>Id.</u> at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> In keeping with the principles of <u>Twombly</u>, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u> at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the party's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the . . . well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged . . . are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the p[arty's] entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a p[arty] must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

Judged against these legal benchmarks, Walker's complaint is fatally flawed in at least five critical respects, as described in greater detail below:

**B.      Walker's Complaint Should be Dismissed**

      **1.      The Eleventh Amendment to the United States Constitution Bars This Lawsuit Against the Court of Common Pleas**

At the outset, this *pro se* complaint–which names the Court of Common Pleas of Monroe County as a defendant–runs afoul of basic constitutional and statutory rules

limiting lawsuits against state, state agencies and officials. As a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the . . . States . . . .", U. S. Const. Amend XI. By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies. Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and therefore also is barred by the Eleventh Amendment. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).

Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens. Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996). The constitutional protections afforded to the states and the state court system under the Eleventh Amendment also expressly apply to the state agencies that are integral parts of Pennsylvania's unitary court system. These state court agencies, which also enjoy immunity from lawsuit under the Eleventh Amendment, include the various county common pleas courts which are defined by statute as institutions of state government. See, e.g., Walters v. Washington County, No. 06-1355, 2009 WL 7936639 (W.D. Pa. March 23, 2009);Van Tassel v. Lawrence County Domestics Relations Section, No. 09-266, 2009 WL 3052411 (W.D. Pa. Sept. 22, 2009). Therefore, absent

an express waiver of the immunity established by the Eleventh Amendment, all of these agencies, and their employees who are sued in their official capacities, are absolutely immune from lawsuits in federal court.

In sum, since Walker's federal civil rights claims against the Commonwealth of Pennsylvania, and its court system, are barred by the Eleventh Amendment to the United States Constitution, the Court of Common Pleas of Monroe County should be dismissed from this action.

> **2.** **The Rooker-Feldman Doctrine also Prevents Walker from Re-litigating these Claims Which He Lost in State Court**

In addition, the <u>Rooker-Feldman</u> doctrine also applies here and in our view bars further consideration of this matter, which apparently arises out of a state domestic relations, protection-from-abuse case. Given these state court proceedings, this complaint fails because we lack subject matter jurisdiction over the issues raised by Walker, which necessarily invite a federal court to review, re-examine and reject state court rulings in a state domestic relations protection-from-abuse case.

This we cannot do. Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the <u>Rooker-Feldman</u> doctrine, which compels federal district courts to decline invitations to conduct what amounts to appellate review of state trial court decisions. As described by the Third Circuit:

> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court....". See also Desi's Pizza, Inc. v. City of Wilkes Barre, 321 F.3d 411, 419 (3d Cir.2003). "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions." Desi's Pizza, 321 F.3d at 419.

Gary v. Braddock Cemetery, 517 F.3d 195, 200 (3d Cir. 2008).

Because federal district courts are not empowered by law to sit as reviewing courts, reexamining state court decisions, "[t]he Rooker-Feldman doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication."

Turner v. Crawford Square Apartments III, LLP,, 449 F.3d 542, 547 (3d Cir. 2006).

Cases construing this jurisdictional limit on the power of federal courts have quite appropriately:

> [E]mphasized the narrow scope of the Rooker-Feldman doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[Exxon Mobil Corp. v. Saudi Basic Industries Corp.], 544 U.S. at 284, 125 S.Ct. at 1521-22; see also Lance v. Dennis, 546 U.S. 459, ----, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006)

Id.

However, even within these narrowly drawn confines, it has been consistently recognized that the Rooker-Feldman doctrine prevents federal judges from considering civil rights lawsuits which seek to re-examine state domestic relations court rulings that are presented "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." Kwasnik v. Leblon, 228 F. App'x 238, 242 (3d Cir. 2007). In such instances, the federal courts have typically deferred to the state court domestic relations decisions, and rebuffed efforts to use federal civil rights laws to review, or reverse, those state court rulings. See, e.g., Marran v. Marran, 376 F.3d 143 (3d. Cir. 2004); Kwasnik 228 F. App'x 238, 242; Smith v. Department of Human Services, 198 F. App'x 227 (3d Cir. 2006); Van Tassel v. Lawrence County Domestic Relations Section, 659 F. Supp. 2d 672, 690 (W.D. Pa. 2009) aff'd sub nom. Van Tassel v. Lawrence County Domestic Relations Sections, 390 F. App'x 201 (3d Cir. 2010)(Rooker-Feldman doctrine operates as a jurisdictional bar to Plaintiff's claims if the injuries of which she complains were caused by a state court judgment or ruling which was entered against her); Buchanan v. Gay, 491 F. Supp. 2d 483, 487 (D. Del. 2007); Rose v. County of York, No. 05-5820, 2007 WL 136682 (E.D. Pa. Jan. 12, 2007); Logan v. Lillie, 965 F. Supp. 695, 696 (E.D. Pa. 1997) aff'd, 142 F.3d 428 (3d Cir. 1998); Behr v. Snider, 900 F. Supp. 719, 721 (E.D. Pa. 1995).

Given this settled legal authority, applying the <u>Rooker-Feldman</u> doctrine in the particular field, Walker's claims–which necessarily invite a federal court to review, re-examine and reject state court rulings in a state domestic relations, protection-from-abuse case that are presented "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced"– simply may not be pursued in this federal forum.  <u>Kwasnik v. Leblon</u>, 228 F. App'x 238, 242 (3d Cir. 2007).

### 3. <u>Walker May Not Maintain a Civil Rights Claim Against a Private Attorney</u>

Furthermore, to the extent that Walker seeks to sue the court appointed counsel who appeared on his behalf in these state proceedings, it is clear that Walker may not bring such claims against private counsel  as civil rights violations pursuant to 42 U.S.C. §1983. It is well-established that § 1983, the principal federal civil rights statute, does not by its own force create new and independent legal rights to damages in civil rights actions. Rather, § 1983 simply serves as a vehicle for private parties to bring civil actions to vindicate violations of separate, and pre-existing, legal rights otherwise guaranteed under the Constitution and laws of the United States. <u>Albright v. Oliver</u>, 510 U.S. 266, 271 (1994); <u>Graham v. Connor</u>, 490 U.S. 386, 393-94 (1989). Therefore, any analysis of the legal sufficiency of a cause of action under § 1983 must begin with an

assessment of the validity of the underlying constitutional and statutory claims advanced by the plaintiff.

In this regard, it is also well-settled that:

Section 1983 provides a remedy for deprivations of federally protected rights caused by persons acting under color of state law. The two essential elements of a § 1983 action are: *(1) whether the conduct complained of was committed by a person acting under color of state law*; and (2) whether this conduct deprived a person of a federally protected right. Parratt v. Taylor, 451 U.S. 527, 535 (1981).

Boykin v. Bloomsburg University of Pennsylvania, 893 F. Supp. 409, 416 (M.D.Pa. 1995), aff'd, 91 F3d 122 (3d Cir. 1996)(emphasis added). Thus, it is essential to any civil rights claim brought under § 1983 that the plaintiff allege and prove that the defendants were acting under color of law when that defendant allegedly violated the Plaintiff's rights. To the extent that a complaint seeks to hold private parties liable for alleged civil rights violations, it fails to state a valid cause of action under 42 U.S.C. § 1983 since the statute typically requires a showing that the defendants are state actors. Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

This principle applies with particular force to civil rights plaintiffs like Walker, who may invite the courts to consider lawsuits against private attorneys for actions taken in the course of litigation. With respect to this state action requirement, it is well-settled that the conduct of an attorney, representing a client in a state case, does not by itself rise to the level of state action entitling a plaintiff to bring a federal civil rights

actions against private counsel. See, e.g., West v. Atkins, 487 U.S. 42, 50 (1988); Polk County v. Dodson, 454 U.S. 312 (1981); Pete v. Metcalfe, 8 F.3d 214 (5th Cir. 1993). Thus, in the absence of further well-pleaded fact, this claim against Walker's prior counsel also fails as a matter of law.

4. **The Judges and Judicial Employees Named in This Lawsuit Are Entitled to Immunity**

Furthermore, in his complaint Walker seeks to hold a state judge and prothonotary office staff personally liable to him. To the extent that the plaintiff seeks in his complaint to hold these judicial officers personally liable for civil rights violations, it is well-settled that these officials are individually cloaked with immunity from liability. The United States Supreme Court has long recognized that those officials performing judicial, quasi-judicial, and prosecutorial functions in our adversarial system must be entitled to some measure of protection from personal liability for acts taken in their official capacities. In order to provide this degree of protection from liability for judicial officials, the courts have held that judges, Mireless v. Waco, 502 U.S. 9, 13 (1991); prosecutors, Imbler v. Pachtman, 424 U.S. 409, 427 (1976); and those who perform adjudicative functions, Imbler, 424 U.S. at 423 n.20 (grand jurors); Harper v. Jeffries, 808 F.2d 281, 284 (3d Cir. 1986)(parole board adjudicators); are entitled to immunity from personal liability for actions they take in our adversarial system of

justice. In this regard, the broad scope of this immunity was clearly articulated by this court in the following terms:

> "It is a well-settled principle of law that judges are generally 'immune from a suit for money damages.'" Figueroa v. Blackburn, 208 F.3d 435, 440 (3d Cir.2000) (quoting Mireles v. Waco, 502 U.S. 9, 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam), and citing Randall v. Brigham, 74 U.S. (7 Wall.) 523, 536, 19 L.Ed. 285 (1868)). "The doctrine of judicial immunity is founded upon the premise that a judge, in performing his or her judicial duties, should be free to act upon his or her convictions without threat of suit for damages." Id. (citations omitted). Therefore, "[a] judge is absolutely immune from liability for his [or her] judicial acts even if his [or her] exercise of authority is flawed by the commission of grave procedural errors," Stump v. Sparkman, 435 U.S. 349, 359, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), and "[j]udicial immunity cannot be overcome by allegations of bad faith or malice" Goldhaber v. Higgins, 576 F.Supp.2d 694, 703 (W.D.Pa.2007). Such immunity can be overcome only where a judge's acts are nonjudicial in nature, or where such actions, while judicial in nature, are "taken in the complete absence of all jurisdiction." Mireles, 502 U.S. at 12.

Catanzaro v. Collins, CIV. A. 09-922, 2010 WL 1754765 (M.D. Pa. Apr. 27, 2010) aff'd, 447 F. App'x 397 (3d Cir. 2011).

These longstanding common law immunities for judicial, officials directly apply here and prevent the plaintiff from maintaining this civil action for damages against the individual judge he has named in his complaint, who is clearly entitled to judicial immunity for his actions presiding over Walker's state case. See, e.g., Arsad v. Means, 365 F. App'x 327 (3d Cir. 2010); Figueroa v. Blackburn, 208 F.3d 435 (3d Cir. 2000). Furthermore, it is also clear that the scope of these protections extend beyond judges to those who take discretionary actions at the direction of the courts. As this court has observed:

Quasi-judicial officers, who act in accordance with their duties or at the direction of a judicial officer, also are immune from suit. See Gallas, 211 F.3d at 772-73 (court administrator entitled to immunity for release of information ordered by a judge); Lockhart v. Hoenstine, 411 F.2d 455, 460 (3d Cir.1969) (holding that prothonotary, acting under court direction, was immune from suit). The doctrine of absolute quasi-judicial immunity has been applied to court support personnel due to "the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts." Kincaid v. Vail, 969 F.2d 594, 601 (7th Cir.1992). See also Johnson v. Kegans, 870 F.2d 992, 995 (5th Cir.1989) ("Prosecutors and other necessary participants in the judicial process enjoy quasi-judicial immunity as well.").Quasi-judicial absolute immunity is available to those individuals, such as Defendants Kline and Brewer, who perform functions closely associated with the judicial process. Marcedes v. Barrett, 453 F.2d 391 (3d Cir.1971) (holding that quasi-judicial immunity applied to clerk of courts, an administrative assistant to the president judge and a court reporter); Henig v. Odorioso, 385 F.2d 491, 494 (3d Cir.1967) (holding that judiciary employees executing judicial orders are immune from suit); Davis v. Philadelphia County, 195 F.Supp.2d 686 (E.D.Pa.2002) (holding that quasi-judicial immunity applies to court staff, such as clerks of judicial records and court reporters).

Stout v. Naus, 09-390, 2009 WL 1794989, at 3 (M.D. Pa. 2009)(McClure, J.).

These longstanding common law immunities for judicial and quasi-judicial officials directly apply here and prevent the plaintiff from maintaining this civil action for damages against the individual judge and state court judicial staff he has named in his complaint, all of whom should be dismissed from this action.

### 5. Walker May Not Maintain a Federal Freedom of Information Act Claim Against State Officials

Furthermore, to the extent that Walker relies upon the federal Freedom of Information and Privacy Acts, 5 U.S.C. §§551-552a, to endeavor to bring an action against local and state authorities, he misconstrues the reach of these federal statutes. By their terms, the Freedom of Information and Privacy Acts, 5 U.S.C. §§551-552a, only apply to federal agencies and officials. Therefore, it has long been held that these federal statutes do not compel state or local agencies to maintain, or produce, records. See, e.g., Sowell's Meats and Services, Inc. V. McSwain, 788 F.2d 226, 228, n. 2 (4th Cir. 1986); St. Michael's Convalescent Hospital v. California, 643 F.2d 1369, 1373 (9th Cir. 1981); Johnson v. Wells, 566 F.2d 1016, 1018 (5th Cir. 1978); Lathrop v. Juneau & Associates, Inc., 220 F.R.D. 330, 336 (S.D. Ill. 2004); Ryans v. New Jersey Commission of the Blind, 542 F.Supp. 841, 852 (D.N.J. 1982). Accordingly, these statutes simply do not provide Walker with any legal grounds for leveling federal claims against these state defendants.

### 6. This Complaint Should be Dismissed Without Prejudice

In sum, in its current form this complaint fails to state a claim against these defendants upon which relief may be granted for at least five reasons. While this merits analysis calls for dismissal of this action in its current form, we recommend that the plaintiff be given another, final opportunity to further litigate this matter by endeavoring to promptly file an amended complaint. We recommend this course mindful of the fact that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to

amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Accordingly, it is recommended that the Court provide the plaintiff with an opportunity to correct these deficiencies in this *pro se* complaint, by dismissing this deficient complaint at this time without prejudice to one final effort by the plaintiff to comply with the rules governing civil actions in federal court.

### III. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED as follows:

1.  First, Walker's motion for entry of default (Doc. 12), should be denied since the defendants have now responded to the complaint by filing motions to dismiss.

2.  Second, in light of the denial of this default motion, the defendants' motion to strike this default motion should be dismissed as moot. (Doc. 15.)

3.  Third, since there are a series of profound legal deficiencies in Walker's various *pro se* complaints, the defendants' motions to dismiss (Docs. 17 and 20), should be granted and the plaintiff's complaint should be dismissed without prejudice to the plaintiff endeavoring to file a single

comprehensive amended complaint which attempts to cure the deficiencies cited in this report and recommendation, provided that the plaintiff acts within 20 days of any dismissal order by filing an amended complaint containing "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

4. Finally, in light of this proposed disposition of the motions to dismiss, it is recommended that the motion for extension of time in which to respond to Walker's various complaints (Doc. 14), be dismissed as moot.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 27th day of December, 2012.

***S/Martin C.  Carlson***
Martin C. Carlson
United States Magistrate Judge