# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BEN WALKER,  :
  : Civil No. 3:12-CV-2206
    Plaintiff  :
  : (Judge Caputo)
    v.  :
  : (Magistrate Judge Carlson)
COURT OF COMMON PLEAS OF  :
MONROE COUNTY, et al.,  :
  :
    Defendants  :

## REPORT AND RECOMMENDATION

**I.**    **Statement of Facts and of the Case**

In this case we are now called upon to consider a motion to dismiss what is by our reckoning the fourth amended complaint filed by the plaintiff. Finding this latest amended complaint is still flawed as to the moving defendants, it is recommended that the motion to dismiss be granted.

This is a *pro se* civil rights action first brought by Ben Walker on November 5, 2012, through the filing of a complaint. (Doc. 1.) Walker complaint, which he amended three times during the first two weeks of this litigation, (Docs. 2, 5 and 6.), named the Court of Common Pleas of Monroe County, the prothonotary, the deputy prothonotary, several assistant public defenders and private attorneys, and a state court judge as defendants. (Id.) Walker then alleged in a vague and conclusory fashion that

these institutional and individual defendants collectively harmed him in the course of state court litigation of a protection from abuse matter, and further asserted that the defendants, individually and collectively, have failed to comply with the Freedom of Information Act. (Id.)

Walker's *pro se* complaint initially inspired a welter of sometimes confusing litigation activity. Much of this activity was inspired by Walker, who has amended, revised, supplemented and corrected pleadings no less than seven times during the brief course of this litigation. (Docs. 2, 4, 5, 6, 7, 8, and 25.) In order to provide a fair and orderly course to this litigation, on December 27, 2012, we filed a Report and Recommendation which recommended that Walker's motion for entry of default should be denied and found that, since there were a series of profound legal deficiencies in Walker's various *pro se* complaints, the defendants' motions to dismiss the complaints should be granted and the plaintiff's complaints should be dismissed without prejudice to the plaintiff endeavoring to file a single comprehensive amended complaint which attempted to cure the deficiencies cited in the Report and Recommendation. (Doc. 28.) On May 29, 2013, the district court adopted this Report and Recommendation, and dismissed Walker's complaint without prejudice to the filing of an amended complaint. (Doc. 33.)

Walker has attempted to comply with this directive by filing a four-page document styled as an amended complaint. (Doc. 34.) This document, regrettably, does not address in any coherent way the deficiencies previously cited by the court, but instead provides a confused and confusing legal and factual narrative in the nature of a critique of the court's prior recommendations and decisions. (Id.) Confronted with this amended complaint, the private attorneys, public defenders, prothonotary and deputy prothonotary named in this pleading have moved to dismiss Walker's latest amended complaint. (Doc. 35.) This motion is fully briefed by the parties, (Docs. 36 and 37.), and is, therefore, ripe for resolution.

For the reasons set forth below, it is recommended that the motion to dismiss be granted.

**II.   Discussion**

    **A.   Motion to Dismiss-Standard of Review**

For their part, the defendants have moved to dismiss this complaint, citing Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips [v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a p[arty] to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... p[arty] can prove facts that the ... p[arty] has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).

As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action a party must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." <u>Id.</u> at 555. "Factual

allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the party's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the

factual and legal elements of a claim should be separated. The District Court must accept all of the . . . well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged . . . are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the p[arty's] entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a p[arty] must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

Judged against these legal benchmarks, for the reasons set forth below, Walker's amended complaint remains fatally flawed with respect to these defendants.

> **B.** **Walker's Complaint Should be Dismissed As to Defendants Cutaio, Fedrigon, Jones, Warden and Niemoczynski**
>
> **1.** **The Rooker-Feldman Doctrine Prevents Walker from Re-litigating these Claims Which He Lost in State Court**

At the outset, the Rooker-Feldman doctrine continues to apply here and bars further consideration of this matter, which arises out of a state domestic relations, protection-from-abuse case. Given these state court proceedings, this complaint fails because we lack subject matter jurisdiction over the issues raised by Walker, which necessarily invite a federal court to review, re-examine and reject state court rulings in a state domestic relations protection-from-abuse case. Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the Rooker-Feldman doctrine, which compels federal district courts to decline invitations to conduct what amounts to appellate review of state trial court decisions. As described by the Third Circuit:

> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court....". See also Desi's Pizza, Inc. v. City of Wilkes Barre, 321 F.3d 411, 419 (3d Cir.2003). "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions." Desi's Pizza, 321 F.3d at 419.

Gary v. Braddock Cemetery, 517 F.3d 195, 200 (3d Cir. 2008).

Because federal district courts are not empowered by law to sit as reviewing courts, reexamining state court decisions, "[t]he Rooker-Feldman doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication." Turner v. Crawford Square Apartments III, LLP,, 449 F.3d 542, 547 (3d Cir. 2006). Cases construing this jurisdictional limit on the power of federal courts have quite appropriately:

> [E]mphasized the narrow scope of the Rooker-Feldman doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." [Exxon Mobil Corp. v. Saudi Basic Industries Corp.], 544 U.S. at 284, 125 S.Ct. at 1521-22; see also Lance v. Dennis, 546 U.S. 459, ----, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006)

Id.

However, even within these narrowly drawn confines, it has been consistently recognized that the Rooker-Feldman doctrine prevents federal judges from considering civil rights lawsuits which seek to re-examine state domestic relations court rulings that are presented "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." Kwasnik v. Leblon, 228 F. App'x 238, 242 (3d Cir. 2007). In such instances, the federal courts have typically deferred to the state court domestic relations decisions, and rebuffed efforts to use federal civil rights laws to review, or reverse, those state court rulings. See, e.g., Marran v. Marran, 376 F.3d 143 (3d. Cir. 2004); Kwasnik 228 F. App'x 238, 242; Smith v. Department of Human Services, 198 F. App'x 227 (3d Cir. 2006); Van Tassel v. Lawrence County Domestic Relations Section, 659 F. Supp. 2d 672, 690 (W.D. Pa. 2009) aff'd sub nom. Van Tassel v. Lawrence County Domestic Relations Sections, 390 F. App'x 201 (3d Cir. 2010)(Rooker-Feldman doctrine operates as a jurisdictional bar to plaintiff's claims if the injuries of which she complains were caused by a state court judgment or ruling which was entered against her); Buchanan v. Gay, 491 F. Supp. 2d 483, 487 (D. Del. 2007); Rose v. County of York, No. 05-5820, 2007 WL 136682 (E.D. Pa. Jan. 12, 2007); Logan v. Lillie, 965 F. Supp. 695, 696 (E.D. Pa. 1997) aff'd, 142 F.3d 428 (3d Cir. 1998); Behr v. Snider, 900 F. Supp. 719, 721 (E.D. Pa. 1995).

Given this settled legal authority, applying the Rooker-Feldman doctrine in the particular field, Walker's claims, which necessarily invite a federal court to review, re-examine and reject state court rulings in a state domestic relations, protection-from-abuse case that are presented "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced," simply may not be pursued in this federal forum and should be dismissed. Kwasnik v. Leblon, 228 F. App'x 238, 242 (3d Cir. 2007).

### 2. **Walker May Not Maintain a Civil Rights Claim Against a Private Attorney**

Furthermore, to the extent that Walker persists in seeking to sue the court appointed counsel who appeared in these state proceedings, or the attorney who represented his spouse, it is clear that Walker may not bring such claims against private counsel as civil rights violations pursuant to 42 U.S.C. §1983. It is well-established that § 1983, the principal federal civil rights statute, does not by its own force create new and independent legal rights to damages in civil rights actions. Rather, § 1983 simply serves as a vehicle for private parties to bring civil actions to vindicate violations of separate, and pre-existing, legal rights otherwise guaranteed under the Constitution and laws of the United States. Albright v. Oliver, 510 U.S. 266, 271 (1994); Graham v. Connor, 490 U.S. 386, 393-94 (1989). Therefore, any analysis of the legal sufficiency of a cause of action under § 1983 must begin with an assessment

of the validity of the underlying constitutional and statutory claims advanced by the plaintiff.

In this regard, it is also well-settled that:

> Section 1983 provides a remedy for deprivations of federally protected rights caused by persons acting under color of state law. The two essential elements of a § 1983 action are: *(1) whether the conduct complained of was committed by a person acting under color of state law*; and (2) whether this conduct deprived a person of a federally protected right. Parratt v. Taylor, 451 U.S. 527, 535 (1981).

Boykin v. Bloomsburg University of Pennsylvania, 893 F. Supp. 409, 416 (M.D.Pa. 1995), aff'd, 91 F3d 122 (3d Cir. 1996)(emphasis added). Thus, it is essential to any civil rights claim brought under § 1983 that the plaintiff allege and prove that the defendants were acting under color of law when that defendant allegedly violated the plaintiff's rights. To the extent that a complaint seeks to hold private parties liable for alleged civil rights violations, it fails to state a valid cause of action under 42 U.S.C. § 1983 since the statute typically requires a showing that the defendants are state actors. Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

This principle applies with particular force to civil rights plaintiffs like Walker, who may invite the courts to consider lawsuits against private attorneys for actions taken in the course of litigation. With respect to this state action requirement, it is well-settled that the conduct of an attorney, representing a client in a state case, does not by itself rise to the level of state action entitling a plaintiff to bring a federal civil rights actions against private counsel. See, e.g., West v. Atkins, 487 U.S. 42, 50

(1988); Polk County v. Dodson, 454 U.S. 312 (1981); Pete v. Metcalfe, 8 F.3d 214 (5th Cir. 1993). Thus, in the absence of further well-pleaded fact, this claims against Walker's prior counsel, or his spouse's attorney, also fail as a matter of law. See Donnelly v. O'Malley & Langan, PC, 370 F. App'x 347, 349 (3d Cir. 2010)(held, pro se plaintiff failed to show that private attorneys practicing in a private law firm, acted "under color of state law" citing Lugar v. Edmondson Oil Co., 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (a private party is a "state actor" for § 1983 purposes only where "he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State"). )

### 3. The Judicial Employees Named in This Lawsuit Are Entitled to Immunity

Furthermore, in his amended complaint Walker seeks to hold a state judge and prothonotary office staff personally liable to him. To the extent that the plaintiff seeks in his complaint to hold these judicial officers personally liable for civil rights violations, it is well-settled that these officials are individually cloaked with immunity from liability. The United States Supreme Court has long recognized that those officials performing judicial, quasi-judicial, and prosecutorial functions in our adversarial system must be entitled to some measure of protection from personal liability for acts taken in their official capacities. In order to provide this degree of protection from liability for judicial officials, the courts have held that judges, Mireless

v. Waco, 502 U.S. 9, 13 (1991); prosecutors, Imbler v. Pachtman, 424 U.S. 409, 427 (1976); and those who perform adjudicative functions, Imbler, 424 U.S. at 423 n.20 (grand jurors); Harper v. Jeffries, 808 F.2d 281, 284 (3d Cir. 1986)(parole board adjudicators); are entitled to immunity from personal liability for actions they take in our adversarial system of justice. In this regard, the broad scope of this immunity was clearly articulated by this court in the following terms:

> "It is a well-settled principle of law that judges are generally 'immune from a suit for money damages.'" Figueroa v. Blackburn, 208 F.3d 435, 440 (3d Cir.2000) (quoting Mireles v. Waco, 502 U.S. 9, 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam), and citing Randall v. Brigham, 74 U.S. (7 Wall.) 523, 536, 19 L.Ed. 285 (1868)). "The doctrine of judicial immunity is founded upon the premise that a judge, in performing his or her judicial duties, should be free to act upon his or her convictions without threat of suit for damages." Id. (citations omitted). Therefore, "[a] judge is absolutely immune from liability for his [or her] judicial acts even if his [or her] exercise of authority is flawed by the commission of grave procedural errors," Stump v. Sparkman, 435 U.S. 349, 359, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), and "[j]udicial immunity cannot be overcome by allegations of bad faith or malice" Goldhaber v. Higgins, 576 F.Supp.2d 694, 703 (W.D.Pa.2007). Such immunity can be overcome only where a judge's acts are nonjudicial in nature, or where such actions, while judicial in nature, are "taken in the complete absence of all jurisdiction." Mireles, 502 U.S. at 12.

Catanzaro v. Collins, CIV. A. 09-922, 2010 WL 1754765 (M.D. Pa. Apr. 27, 2010) aff'd, 447 F. App'x 397 (3d Cir. 2011).

Furthermore, it is also clear that the scope of these protections extend beyond judges to officials like the prothonotary or deputy prothonotary who take discretionary actions at the direction of the courts. As this Court has observed:

Quasi-judicial officers, who act in accordance with their duties or at the direction of a judicial officer, also are immune from suit. See Gallas, 211 F.3d at 772-73 (court administrator entitled to immunity for release of information ordered by a judge); Lockhart v. Hoenstine, 411 F.2d 455, 460 (3d Cir.1969) (holding that prothonotary, acting under court direction, was immune from suit). The doctrine of absolute quasi-judicial immunity has been applied to court support personnel due to "the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts." Kincaid v. Vail, 969 F.2d 594, 601 (7th Cir.1992). See also Johnson v. Kegans, 870 F.2d 992, 995 (5th Cir.1989) ("Prosecutors and other necessary participants in the judicial process enjoy quasi-judicial immunity as well."). Quasi-judicial absolute immunity is available to those individuals, such as Defendants Kline and Brewer, who perform functions closely associated with the judicial process. Marcedes v. Barrett, 453 F.2d 391 (3d Cir.1971) (holding that quasi-judicial immunity applied to clerk of courts, an administrative assistant to the president judge and a court reporter); Henig v. Odorioso, 385 F.2d 491, 494 (3d Cir.1967) (holding that judiciary employees executing judicial orders are immune from suit); Davis v. Philadelphia County, 195 F.Supp.2d 686 (E.D.Pa.2002) (holding that quasi-judicial immunity applies to court staff, such as clerks of judicial records and court reporters).

Stout v. Naus, 09-390, 2009 WL 1794989, at 3 (M.D. Pa. 2009)(McClure, J.).

These longstanding common law immunities for judicial and quasi-judicial officials directly apply here and prevent the plaintiff from maintaining this civil action for damages against the individual state court judicial staff he has named in his complaint, all of whom should also be dismissed from this action.

#### 4. **Walker May Not Maintain a Federal Freedom of Information Act Claim Against State Officials**

Furthermore, to the extent that Walker relies upon the federal Freedom of Information and Privacy Acts, 5 U.S.C. §§551-552a, to endeavor to bring an action against local and state authorities, he misconstrues the reach of these federal statutes. By their terms, the Freedom of Information and Privacy Acts, 5 U.S.C. §§551-552a, only apply to federal agencies and officials. Therefore, it has long been held that these federal statutes do not compel state or local agencies to maintain, or produce, records. See, e.g., Sowell's Meats and Services, Inc. V. McSwain, 788 F.2d 226, 228, n. 2 (4th Cir. 1986); St. Michael's Convalescent Hospital v. California, 643 F.2d 1369, 1373 (9th Cir. 1981); Johnson v. Wells, 566 F.2d 1016, 1018 (5th Cir. 1978); Lathrop v. Juneau & Associates, Inc., 220 F.R.D. 330, 336 (S.D. Ill. 2004); Ryans v. New Jersey Commission of the Blind, 542 F.Supp. 841, 852 (D.N.J. 1982). Accordingly, these statutes simply do not provide Walker with any legal grounds for leveling federal claims against these state defendants. See Donnelly v. O'Malley & Langan, PC, 370 F. App'x 347, 348 (3d Cir. 2010)(held, FOIA applies only to the release of government records by the federal government).

#### 5. **This Complaint Should be Dismissed With Prejudice**

In sum, in its current form this amended complaint still fails to state a claim against these defendants upon which relief may be granted. While in civil rights cases

*pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see <u>Fletcher-Hardee Corp. v. Pote Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004), in this case Walker has been given ample opportunity to amend his complaint, but still is unable to state a claim as to these defendants upon which relief may be granted. Therefore, dismissal of these defendants with prejudice is now appropriate.

### III. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Motion to Dismiss filed by defendants Fred Cutaio, Kimberly Fedrigon, Jessica Jones, Wieslay T. Niemoczynski, and George J. Warden, (Doc. 35.), should be GRANTED, and the plaintiff's amended complaint dismissed as to these defendants with prejudice.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 24th day of July 2013.

                                           ***S/Martin C. Carlson***
                                           Martin C. Carlson
                                           United States Magistrate Judge